IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WISCONSIN CENTRAL LTD., ) | |
| ) | Case No. 1:16-cv-04271 |
| Plaintiff, ) | |
| v. ) | Honorable Andrea R. Wood |
| ) | |
| SOO LINE RAILROAD COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### DEFENDANT AND COUNTERCLAIM PLAINTIFF SOO LINE RAILROAD COMPANY'S MOTION FOR ENTRY OF JUDGMENT

Soo Line Railroad Company ("Soo Line") submits this Motion for Entry of Judgment setting forth the amount of damages caused by Wisconsin Central Ltd.'s ("WCL") breach of the 1987 Asset Purchase Agreement ("APA"), and the evidentiary bases for the amount of damages, as directed by the Court on November 14, 2018. Soo Line also requests an award of attorneys' fees and costs incurred in this litigation, as provided by the terms of the APA, and an award of prejudgment interest on its damages, as required by Minnesota law.

### PROCEDURAL BACKGROUND

On September 30, 2018, this Court issued a Memorandum Opinion and Order granting Soo Line's Motion for Summary Judgment, and denying WCL's Motion for Summary Judgment, on the parties' respective claims for breach of contract under the APA. The Court determined that two claims were asserted against Soo Line under the APA for which WCL was required, but failed, to defend and indemnify Soo Line: (1) the administrative action initiated against Soo Line by the U.S. Environmental Protection Agency ("EPA") pursuant to its Special Notice Letter on April 27, 2011 (the "EPA Claim"), and (2) NSP's complaint against Soo Line filed in 2012 in the United States District Court for the Western District of Wisconsin, in the action entitled

*Northern States Power Co. v. The City of Ashland, et al.*, Case No. 12-cv-602 (W.D. Wis.) (the "NSP Claim") (collectively, the "Superfund claims"). (Docket No. 84, at 22.) This Court's Memorandum Opinion and Order determined that WCL's failure to defend and indemnify Soo Line for the defense and the settlement of the Superfund claims was a breach of the APA:

> Soo Line has established that there is no genuine dispute of material fact that [the] APA required WCL to indemnify it for the defense and settlement of the Superfund claims. Having received timely notice of its obligation, WCL's failure to do so was a breach of the APA. Consequently, summary judgment is granted in favor of Soo Line on its counterclaim.

(Docket No. 84, at 23.) On September 30, 2018, the Court entered judgment in favor of Soo Line. (Docket No. 85.) Thereafter, both parties filed post-judgment motions requesting that the Court address Soo Line's damages, attorneys' fees, and costs.

Soo Line filed a motion for fees, expenses, and costs (Docket No. 86), proposing a procedure largely mirroring the one set forth under Local Rule 54.3(b). Soo Line asserted that this proposed procedure provides the most efficient way to establish the factual basis for both the amount of Soo Line's damages (including the $5.25 million settlement amount and the attorneys' fees and expert witness fees and costs with respect to the Superfund claims), and the amount of Soo Line's attorney's fees and costs from the instant litigation.

WCL's motion requested that the Court withdraw its judgment pursuant to Federal Rules 59(e) or 60(a), and modify the Memorandum Opinion. (Docket No. 88.) WCL argued, contrary to the parties' previously filed Joint Motion to Amend Pretrial Scheduling Order with Respect to Fact Discovery (Docket No. 35) (the "Joint Motion"), that expert depositions based on expert reports addressing liability issues were still required to address Soo Line's damages, notwithstanding the Court's liability determinations in its Memorandum Opinion and Order. During a meet and confer with Soo Line, and in its representations to the Court during the status hearing on October 18, 2018, WCL took the novel position that Soo Line's damages should be

2

16182932.5

subject to an allocation analysis, a method of allocating costs among liable parties that is used in contribution actions under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f). Soo Line filed an objection to WCL's motion. (Docket No. 90.)

Following the October 18, 2018 status hearing, the Court granted WCL's motion in part, vacating the final judgment without modifying its liability determinations, and continued Soo Line's motion. (Docket No. 91.) The Court took the allocation argument raised by WCL under advisement. (Docket No. 91.) During the follow-up status hearing on November 15, the Court directed Soo Line to submit this Motion for Entry of Judgment specifying the amounts of damages caused by WCL's breach of the APA, and the evidentiary basis for those damages. (Docket Nos. 93.)

## ARGUMENT

Soo Line is entitled to recover the damages caused by WCL's contractual breach, including Soo Line's agreed-upon share of the settlement payment for the Superfund claims and its attorneys' fees and costs (including expert witness fees and costs) incurred in defending against those claims. Soo Line also renews its motion to recover its attorneys' fees and costs incurred in the instant litigation, pursuant to Federal Rule 54(d) and Section 19(a) of the APA, which expressly authorizes Soo Line to recover its attorneys' fees and costs. Soo Line further moves the Court for an award of prejudgment interest on all damages caused by WCL, as specifically provided for under applicable Minnesota law.

**I.  THE APA REQUIRED WCL TO INDEMNIFY SOO LINE FOR THE DEFENSE AND SETTLEMENT OF THE SUPERFUND CLAIMS.**

An indemnitee is entitled to the damages caused by an indemnitor's breach of an indemnity agreement, as provided for in the agreement. *See In re RFC & RESCAP Liquidating*

*Trust Action*, Case No. 13-cv-3351, 2018 WL 3911424, at *12 (D. Minn. Aug. 15, 2018) (stating that under Minnesota law, "the threshold question is whether that for which the indemnitee seeks indemnification—whether it be losses, damages, or liabilities—falls within the language of the contract"). Under Section 19(a)(i) of the APA, WCL agreed to indemnify Soo Line for "***any and all*** liabilities and obligations assumed by [WCL] pursuant to this Agreement," which included "all claims for environmental matters relating to the ownership of the Assets or the operation of LST that are asserted after the tenth anniversary of the Closing Date [i.e., October 11, 1997]." APA §§ 19(a) and 4(a)(v)(3), as amended (emphasis added). WCL also agreed to indemnify Soo Line for "any and all demands, claims, actions, suits, proceedings, assessments, ***judgments, costs and legal and other expenses (including attorneys fees)*** incident to" WCL's assumed liabilities and obligations. APA § 19(a)(iv) (emphasis added).

Applying the plain language of the APA, this Court determined in its Memorandum Opinion and Order that "there is no genuine dispute of material fact that [the] APA required WCL to indemnify [Soo Line] ***for the defense and settlement of the Superfund claims***." (Docket No. 84, at 23) (emphasis added). Pursuant to the Court's Memorandum Opinion and Order, all that remains in this case with respect to those damages is for the Court to quantify the dollar amount incurred and paid by Soo Line for the settlement and defense of the Superfund claims, and to award Soo Line its costs and fees in this case, along with prejudgment interest.

Soo Line paid $5,250,000 (50-percent of the railroads' $10.5 million settlement), plus pre-payment interest, to fully and finally resolve the two Superfund claims, for a total settlement amount of $5,259,555. (Andrew W. Davis Declaration ("Davis Decl.") ¶ 12.) In addition, Soo Line incurred $5,082,545 in attorneys' fees, and $291,065 in litigation costs (not including expert witness fees), to defend against the Superfund claims. (Davis Decl. ¶ 4.) Soo Line also incurred

expert witness fees and related costs of $706,262 to defend against the Superfund claims. (Davis Decl. ¶ 10.) These expert fees and costs represented Soo Line's share of the total amount of expert witness fees and costs (and mediation costs), which Soo Line and WCL agreed to split on a 50-50 basis. (Davis Decl. ¶ 10.)

The defense of the Superfund claims involved both an administrative action commenced by the EPA and U.S. Department of Justice, and federal court litigation against NSP and three other parties. Soo Line and WCL jointly defended against the EPA Claim and the NSP Claim pursuant to a joint defense agreement. Soo Line's outside counsel played a lead role in the defense of the administrative action and the litigation, including conducting discovery, taking and defending fact and expert depositions, researching and briefing substantive motions, and mediating and negotiating settlement. (Davis Decl. ¶ 5.)

Together, litigation of the Superfund claims continued from April 2011 through early 2015. The two cases involved complex scientific and technical matters relating to the causes and remediation of contamination from a manufactured gas plant owned by NSP's predecessors. Both cases encompassed factual matters that stretched back to the 1800s, numerous expert witnesses and reports from multiple parties, dozens of expert and fact depositions, millions of pages of produced documents, and extended settlement efforts, including multiple rounds of formal mediation proceedings and informal multi-party negotiations. (Davis Decl. ¶ 5.)

WCL shared in Soo Line's work product and expert reports in both cases, joined in Soo Line's substantive motions and mediation filings, and generally benefitted from Soo Line's trial preparation and negotiation efforts, allowing the parties to generally avoid duplication of efforts. (Davis Decl. ¶ 5.) WCL relied on Soo Line's legal research, drafting, development of expert

reports, and discovery and settlement efforts, rather than develop its own independent theories and expert reports, allowing it to reduce its own fees and costs.[1]

Under CERCLA Section 107, 42 U.S.C. § 9607, Soo Line and WCL faced the possibility of joint and several liability to the United States and/or NSP for the entire cost of cleaning up the Ashland/NSP Lakefront Superfund Site, with cleanup-related costs estimated in the range of at least $180 million. (Davis Decl. ¶ 6.) Further, if Soo Line (and WCL) had refused to participate in the administrative action initiated by EPA's Special Notice Letter, it could have faced substantial penalties and the potential for treble damages, as allowed under CERCLA Sections 106 and 107, 42 U.S.C. §§ 9606(b)(1) and 9607(c)(3). (Davis Decl. ¶ 7.) Thus, as Soo Line prepared its defense to the two Superfund claims, it reasonably understood that total joint and several liability exposure for the Site could be $200 million or more. (Davis Decl. ¶ 9.)

Federal law in this Circuit governs the extent of fees that Soo Line can recover. *See Capital One Auto Fin., Inc. v. Orland Motors, Inc.*, No. 09-cv-4731, 2012 WL 3777025, at *3 (N.D. Ill. Aug. 27, 2012). Under *Medcom Holding Co. v. Baxter Travenol Labs.*, 200 F.3d 518, 521 (7th Cir. 2000), attorneys' fees are recoverable where they are commercially reasonable, which is assessed "by looking to market mechanisms" to ensure a party's fees and costs are "'reasonable in relation to the stakes of the case and [the] litigation strategy."[2]

---

[1] Even though WCL joined in most filings and reports, WCL still incurred more than $2 million in attorneys' fees, suggesting Soo Line's greater efforts reasonably necessitated the larger amount of its incurred fees.

[2] "One indicator of reasonableness, and indeed 'the best evidence of the market value of legal services is what people pay for it.'" *Id.* (quoting *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996)). Other indicators include whether a litigant paid for the bills when their ultimate recovery was uncertain, and whether bills were monitored by inside counsel. *See id.*

Given the complex nature of the two Superfund claims, the prospect of joint and several liability potentially in the range of $200 million or more, the joint defense arrangement between WCL and Soo Line, and the scope of work undertaken by Soo Line's counsel, the record demonstrates that Soo Line's fees in defending against the two Superfund claims are commercially reasonable under applicable law. Indeed, given WCL's reliance on the work product generated by Soo Line's litigation team and the benefits WCL derived from such work product, WCL has no legitimate basis for challenging the fees associated with the Superfund claims on the basis of reasonableness. Finally, Soo Line closely monitored and paid the legal fees it now seeks to recover during the pendency of the Superfund claims, at a time when recovery was not certain. (Davis Decl. ¶ 4); *Medcom*, 200 F. 3d at 521 (actual payment of fees when right to recovery not yet determined is indicator of reasonableness and guards against "moral hazard" of taking incurring additional risks and costs when another is liable for them).

In summary, Soo Line is entitled to recover the following damages amounts caused by WCL's failure to defend and indemnify Soo Line for the Superfund claims:

| Soo Line's Damages under the APA | Amount |
| --- | --- |
| Soo Line Settlement Payment (with pre-payment interest) | $5,259,555 |
| Attorneys' fees for Superfund claims | $5,082,545 |
| Costs for defending Superfund claims (not including expert witness fees) | $291,065 |
| Soo Line's 50-percent share of expert witness fees for Superfund claims | $706,262 |
| Less insurance payments received by Soo Line[3] | ($540,000) |
| **Total Damages for the Superfund Claims** | **$10,799,427** |

---

[3] Soo Line received reimbursements from certain insurance carriers in connection with the Superfund claims, which amounts are deducted from Soo Line's damages calculation. (Davis Decl. ¶ 11.)

## II. THE APA AUTHORIZES SOO LINE TO RECOVER ATTORNEYS' FEES AND COSTS INCURRED IN THIS BREACH OF CONTRACT LITIGATION.

Soo Line is also entitled by the express terms of the APA to recover all of its attorneys' fees and costs incurred in the instant breach of contract litigation with WCL. Accordingly, Soo Line renews its Motion for Fees and Costs pursuant to Fed. R. Civ. P. 54(d).[4] (Docket No. 86.)

"A prevailing plaintiff may recover attorneys' fees in a contract action if the contract expressly allows such recovery." *Hallmark Ins. Adm'rs, Inc. v. Colonial Penn Life Ins. Co.*, 697 F. Supp. 319, 328 (N.D. Ill. 1988), *aff'd* 990 F.2d 984 (7th Cir. 1993). Section 19(a)(iii) of the APA specifically requires WCL to indemnify Soo Line for "any and all loss, injury, damage or deficiency resulting from any non-fulfillment of any covenant or agreement on the part of Buyer under this Agreement." (Davis Decl. ¶ 13.)[5] Under Section 19(a)(iv), WCL's indemnification obligation includes "any and all demands, claims, actions, suits, proceedings, assessments, judgments, ***costs and legal and other expenses (including attorneys fees)*** incident to any of the foregoing." (Davis Decl. ¶ 13) (emphasis added). Accordingly, the APA expressly authorizes Soo Line to recover its attorneys' fees, costs, and other expenses incurred in this litigation. *Medcom*, 200 F.3d at 520; *Chamberlain Mfg. Corp. v. Maremont Corp.*, No. 92-C-0356, 1995 WL 769782, at *6 (N.D. Ill. Dec. 29, 1995) (finding similar contract language entitled prevailing party to an award of attorneys' fees); *Kessler v. Superior Care, Inc.*, 127 F.R.D. 513, 522 (N.D. Ill. 1989).

---

[4] Under Rule 54(d), Soo Line must specify the judgment and the statute, rule, or other grounds entitling it to the award, state the amount sought or provide a fair estimate of it, and disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made. Fed. R. Civ. P. 54(d)(2)(B). This information is provided above.

[5] Section 19(a)(ii) similarly requires WCL to indemnify Soo Line for "any and all loss, injury, damage or deficiency resulting from any . . . breach of warranty on the part of Buyer under this Agreement."

To date, Soo Line has incurred **$1,661,058** in attorneys' fees in this case. (Davis Decl. ¶ 13.) Soo Line is continuing to incur attorneys' fees in connection with this motion (including October and November invoices), and will incur fees to the extent additional motion practice or legal work is required for the Court to enter a final judgment and specify any additional monetary awards to which Soo Line is entitled. In addition, Soo Line has incurred **$115,706** in costs, which includes expert witness fees, in the instant litigation with WCL. (Davis Decl. ¶ 13.) In total, Soo Line has incurred attorneys' fees and costs of **$1,776,764** in this case as of the date of this filing.

Applying the *Medcom* factors and other precedent discussed above, the Court should find that Soo Line's fees and costs in this case are commercially reasonable. Indeed, it was WCL, not Soo Line, that initiated this lawsuit, rather than accept the shared-responsibility of the settlement of the Superfund claims. Even now, WCL continues to raise new substantive issues that effectively seek to re-litigate the Court's liability determination. Under these circumstances, WCL is hardly in a position to complain about attorneys' fees and other litigation expenses that Soo Line was forced to incur by WCL's actions.

## III. SOO LINE IS ENTITLED TO AN AWARD OF PREJUDGMENT INTEREST ON ITS DAMAGES.

Soo Line is also entitled to an award of prejudgment interest on all damages caused by WCL's breach of the APA. *See Osterneck v. Ernst & Whitney*, 489 U.S. 169, 175 (1989) ("[P]rejudgment interest is an element of [plaintiff's] complete compensation."); *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 520 (7th Cir. 1993) (same). Minnesota law governs the award of prejudgment interest applicable to Soo Line's damages. *Matter of Oil Spill by Amoco Cadiz Off Coast of France*, 954 F.2d 1279, 1333 (7th Cir. 1992); *Tech. Sols. Co. v. Northrop Grumman Corp.*, 826 N.E.2d 1220, 1225 (Ill. 2005) (stating the law of the state that controls the

substantive issues in the case also controls the issue of prejudgment interest); Memorandum Opinion and Order at 14 (noting that the APA contains a choice-of-law provision applying Minnesota law).

Under Minnesota law, prejudgment interest is computed pursuant to Minn. Stat. § 549.09, subd. 1(c), which provides that for an award greater than $50,000, the interest rate is 10-percent per year. Prejudgment interest runs beginning no later than "the time of the commencement of the action or a demand for arbitration." Minn. Stat. § 549.09, subd. 1(b).

Here, Soo Line filed its Answer and Counterclaim against WCL in this action on July 11, 2016. Thus, under Minnesota law, prejudgment interest on Soo Line's damages runs from July 11, 2016, at 10-percent per year. Using the date of Soo Line's initial pleading in this case through the date of this submission,[6] prejudgment interest currently amounts to $2,635,060. (Davis Decl. ¶ 15.) Accordingly, Soo Line respectfully requests that the Court include in its judgment an award of prejudgment interest of at least $2,635,060, plus the additional amount calculated using the foregoing formula through the date that judgment is entered.

### IV. WCL'S CERCLA-BASED ALLOCATION ARGUMENT IS INCONSISTENT WITH THE APA AND CONTRADICTS ITS PRIOR LITIGATION POSITION.

During the two status hearings in October and November 2018, and after losing its summary judgment motion, WCL's counsel argued that Soo Line's $5.25 million settlement should be subjected to a CERCLA-based allocation. Having failed to persuade the Court on liability issues, WCL apparently now wants to apportion the railroads' collective settlement payment based on each party's respective period of ownership and operation of the railroad right-of-way at Kreher Park, and to thereby reduce Soo Line's damages. While Soo Line cannot fully

---

[6] The Court should recalculate the prejudgment interest using the date that judgment is entered by the Court in this action.

anticipate the arguments that WCL will make, and will respond to WCL's arguments in a reply memorandum, defects in WCL's allocation argument are already apparent.

As Soo Line stated in its objection (Docket No. 90.), WCL's "allocation" argument is inconsistent with the legal positions previously asserted by WCL in the Superfund claims and in this case, is contrary to the scope of the agreed-upon discovery in the parties' Joint Motion,[7] and ignores the fact that neither Soo Line nor WCL had disclosed a damages expert during discovery. Perhaps most importantly, WCL is essentially attempting to re-litigate the scope of the liability issues that were thoroughly addressed by the Court in its Memorandum Opinion and Order.

This is a breach of contract case, not a contribution action under CERCLA. But the "allocation" analysis now apparently being raised by WCL is akin to that conducted by courts when assessing response costs in CERCLA contribution actions under 42 U.S.C. § 9613(f). *See* Environmental Law Handbook (21st ed.) 586-87 (2011). CERCLA Section 113(f) gives "courts broad discretion in determining cost allocation among jointly and severally liable parties in a contribution action." 42 U.S.C. § 9613(f)(1). To allocate CERCLA response costs, courts consider numerous equitable factors such as (1) "the volume of hazardous substances contributed by each party," (2) the "relative degree of toxicity of each party's wastes," and (3) the "extent to which each party was involved in the generation, transportation, treatment, storage, or disposal of the substances involved," among others. Environmental Law Handbook (21st ed.) 586-87 (2011).

---

[7] As the Court correctly observed during the November 15, 2018 status hearing, that Joint Motion said nothing about the need for discovery of allocation-related evidence, but was limited on its face to discovery related to the ***amounts*** of certain categories of damages, including the settlement amount and any interest, consultant and expert witness costs, attorneys' fees, and insurance payments. (Docket No. 35, at 2-3.)

11

By contrast, in this **breach of contract** case, Soo Line is entitled to "all" damages caused by WCL's breach, according to the plain language of the APA. APA § 19(a)(i), (iv); *In re RFC & RESCAP Liquidating Trust Action*, *supra*, 2018 WL 3911424, at *12. The APA is devoid of any language that suggests the parties agreed their indemnity obligations should be subject to an equitable allocation analysis.

Not surprisingly, WCL did not include a CERCLA contribution claim in its Complaint or Amended Complaint against Soo Line; WCL asserted a single cause of action for breach of contract. Nor did WCL seek only its "allocated" share of the railroads' joint settlement or otherwise assert such an "allocation" argument in either its pleadings or in its discovery responses. It was only after Soo Line prevailed on the merits of the parties' breach of contract claims that WCL now requests that the Court revisit its liability determination and, even worse, invites the Court to become entangled in the complexities of the underlying Superfund claims via a back-door damages-allocation theory.

An identical allocation argument was rejected in *Southern California Gas Co. v. Syntellect, Inc.*, No. 08-CV-941, 2014 WL 334462 (S.D. Cal. Jan. 28, 2014). In that case, the indemnitor (Syntellect) argued that it should not be liable for all of the indemnitee's settlement, because fault could be apportioned among other culpable parties. The Court rejected this argument as contrary to the indemnity agreement, which required the indemnitor to pay "***any and all*** claims, actions, suits, proceedings, losses, liabilities, penalties, damages, costs, or expenses of any kind whatsoever arising from patent infringement allegations in connection the System." *Id.* at *6 (emphasis added).[8] Here, the APA similarly required WCL to indemnify Soo

---

[8] Minnesota courts have reached the same conclusion: the duty to indemnify does not depend on an allocation or apportionment of fault, unless expressly required by the indemnity

Line for "***any and all*** liabilities and obligations assumed by [WCL] under this Agreement," without regard to fault. APA § 19(a)(1).

WCL's new allocation argument also contradicts its prior litigation position in the Superfund claims, its representations to a federal court in a judicially binding Consent Decree, and its own obligations under that Consent Decree.[9] In their pleadings and joint summary judgment motion to the federal court in the NSP Claim, in submissions to the United States in the EPA Claim, and in their expert reports in the Superfund claims, both railroads repeatedly denied any liability for the Ashland/NSP Lakefront Superfund Site. WCL's and Soo Line's position was well supported by extensive expert analysis and reports.[10] These reports stated, among other things, that the railroads did not in fact cause or contribute to any contamination at the Site, and that WCL and Soo Line were never "owners" within the meaning of CERCLA based on Wisconsin real property law and CERCLA case law.[11] In the Consent Decree and in settlement

---

language. *Christenson v. Egan Cos.*, No. A09-1539, 2010 WL 2161822, at *2 (Minn. Ct. App. June 1, 2010) (holding the indemnitor must pay all damages; a sub-sub-contractor's duty to indemnify a subcontractor "was contractual and thus did not depend on a determination of comparative fault").

[9] Among other things, the Consent Decree requires WCL to notify the EPA and U.S. Department of Justice if it asserts a contribution claim relating to the Consent Decree. (Consent Decree Between United States, NSP, Soo Line, and WCL, at § XI.30 (Ex. JJJ to Declaration of Aleava Sayre in Support of Soo Line's Summary Judgment Motion, Docket No. 50-3).) Soo Line is not aware that WCL has provided any such notice. In point of fact, WCL has not and cannot now assert a contribution claim, but it is attempting to secure the benefit of such a claim by asking this Court to allocate liability based on CERCLA "equitable" factors.

[10] The amount of the railroads' settlement ($10.5 million) in proportion to the estimated $200 million in estimated cleanup and other costs at the Site suggests that the United States and NSP were persuaded by the railroads' technical and legal analyses.

[11] Soo Line demonstrated in its defense of the underlying Superfund claims that much of the property subject to the claims did not qualify for ownership liability because (1) the property remained classified as a lakebed that, by operation of law, can never be owned by a private party; and (2) most of the property was only held as easements, which federal courts have recognized does not constitute a basis for CERCLA ownership liability. WCL joined in these arguments.

agreements filed to resolve the underlying Superfund claims, the railroads again denied any and all liability for the Site.[12] Yet the allocation of response costs under CERCLA is available only "***among liable parties***." 42 U.S.C. § 9613(f)(1) (emphasis added). Indeed, having repeatedly disclaimed all liability in binding representations to a federal district court, the United States, and other parties, WCL should be estopped from now asserting that Soo Line and WCL are in fact at fault for contamination at the Site. *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 527 (7th Cir. 1999) (discussing elements of judicial estoppel).

In short, WCL's allocation argument is a last ditch attempt to avoid the conclusion that "there is no genuine dispute of material fact that [the] APA required WCL to indemnify it ***for the defense and settlement of the Superfund claims***." (Docket No. 84, at 23) (emphasis added). WCL should not be allowed to re-litigate the issues already resolved by this Court.

## CONCLUSION

Soo Line respectfully requests that the Court grant its Motion for Entry of Judgment, enter a final Judgment in this case, and specifically quantify in its Judgment the amount of Soo Line's damages, fees, costs, and prejudgment interest, as discussed above.

Respectfully submitted,

Soo Line Railroad Company

Dated: December 19, 2018   /s/Andrew W. Davis
Andrew W. Davis (*pro hac vice*) (MN #0386634)
Nathan E. Endrud (*pro hac vice*) (MN #0389459)
STINSON LEONARD STREET LLP

---

[12] *See* Settlement Agreement and Release between NSP, WCL, and Soo Line, at p. 2 and ¶ 13(a) (Ex. 48 to WCL's Motion for Summary Judgment, Docket No. 54-48); Consent Decree, at § I.J, Docket No. 50-3; Settlement Agreement Between WCL and Soo Line dated November 4, 2014, at p. 1 (WCL Complaint Ex. 1, Docket No. 1-12) ("[E]ach Railroad has denied any liability or other responsibility for the Site in the USEPA CERCLA Claims and NSP Lawsuit.").

50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657

Gregory A. Fontaine (*pro hac vice*) (MN #0131908)
Aleava R. Sayre (*pro hac vice*) (MN #0386491)
STOEL RIVES LLP
33 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 373-8800
Facsimile: (612) 373-8881

Michael J. Hughes (IL #6201324)
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 1700
Chicago, IL 60602-3801

**Attorneys for Defendant and Counterclaim Plaintiff Soo Line Railroad Company**

# CERTIFICATE OF SERVICE

I, Andrew W. Davis, an attorney, hereby certify that a copy of the foregoing Motion for Entry of Judgment was served on counsel for all parties electronically via the CM/ECF system on December 19, 2018.

Dated: December 19, 2018         /s/Andrew W. Davis
                                               Andrew W. Davis